Mark L. Javitch (CA SBN 323729)
Javitch Law Office
480 S. Ellsworth Ave
San Mateo, CA 94401
Telephone: 650-781-8000
Facsimile: 650-648-0705
mark@javitchlawoffice.com
*Attorney for Plaintiff*
and the Putative Class

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| LAWRENCE PASCAL, individually and on behalf of all others similarly situated<br><br>Plaintiff,<br><br>v.<br><br>JRX CAPITAL LLC., a Colorado limited liability company, FREEDOMSOFT303, LLC, a Colorado limited liability company<br><br>Defendants | Case No.: 3:19-cv-03382-HSG<br><br>**FIRST AMENDED<br>CLASS ACTION COMPLAINT**<br><br>**JURY TRIAL DEMANDED** |

**CLASS ACTION COMPLAINT**

1.  Plaintiff LAWRENCE PASCAL ("Plaintiff") brings this First Amended Class Action Complaint and Demand for Jury Trial against Defendant JRX CAPITAL LLC d/b/a REAL ESTATE FROM ANYWHERE and Defendant FREEDOMSOFT303, LLC (together, "Defendants") to stop spamming lists of phone numbers they download from the Internet.  Defendants send text messages *en masse* to unwitting recipients without even attempting to obtain consent. Plaintiff seeks to obtain redress for all persons injured by their conduct. Plaintiff alleges as follows upon personal knowledge as to itself and Plaintiff's own acts and experiences, and, as to all other matters, upon information and belief, including investigation conducted by its attorney.

## NATURE OF THE ACTION

2. Defendant FREEDOMSOFT303, LLC sells "Freedomsoft," an online software wizard allowing users to download lists of phone numbers and then create campaigns that quickly send text messages to those phone numbers.

3. JRX CAPITAL LLC used Freedomsoft to send text messages marketing its real estate properties to Plaintiff and the Class.

4. But Defendants failed to obtain consent prior to sending these campaigns and, therefore, are in violation of the Telephone Consumer Protection Act ("TCPA"), 47 U.S.C. § 227.

5. Congress enacted the TCPA in 1991 to restrict the use of sophisticated telemarketing equipment that could target millions of consumers *en masse*. Congress found that abuse of such equipment was not only a nuisance and an invasion of privacy to consumers specifically but was also a threat to interstate commerce generally. *See* S. Rep. No. 102-178, at 2-3 (1991), as reprinted in 1991 U.S.C.C.A.N. 1968, 1969-71.

6. The TCPA targets unauthorized texts exactly like the ones alleged in this case, based on Defendants' use of sophisticated technological software to spam consumers *en masse*.

7. By sending the texts at issue, Defendants violated the common law and statutory rights of Plaintiff and the Class and caused actual and statutory damages.

8. Plaintiff therefore seeks an injunction requiring Defendants to stop texting downloaded lists of phone numbers, as well as an award of actual and statutory damages to the Class members, as well as costs.

## PARTIES

9. Plaintiff LAWRENCE PASCAL is a natural person and is a citizen of San Mateo County, in the Northern District of California.

10. Defendant JRX CAPITAL LLC ("JRX") is a limited liability company organizing and existing under the laws of the state of Colorado with its principal place of business at 5023 W 120th Ave #102, Broomfield, Colorado 80020.

11. Defendant FREEDOMSOFT303, LLC ("Freedomsoft") is a limited liability company organizing and existing under the laws of the state of Colorado with its principal place of business at 5023 W 120th Ave #102, Broomfield, Colorado 80020.

## JURISDICTION AND VENUE

12. This Court has jurisdiction under the Class Action Fairness Act of 2005, which provides federal district courts with original jurisdiction to hear a class action if the class has more than 100 members, the parties are minimally diverse, and the matter in controversy exceeds $5 million in sum or value. 28 U.S.C. §§ 1332(d)(2), (d)(5)(B).

13. This Court has original jurisdiction to hear general federal questions such as whether Defendants violated the TCPA, a federal statute.

14. This Court has personal jurisdiction over Defendants because they sent text messages into this District in California for marketing purposes and because this lawsuit arises directly from those messages sent into the forum.

15. Venue is proper in this District pursuant to 28 U.S.C. § 1391(b)(2) because the wrongful conduct giving rise to this case substantially occurred in this District.

## COMMON FACTUAL ALLEGATIONS

16. In order to market its real estate listings, JRX used an online software program called Freedomsoft.

17. On Freedomsoft's website at Freedomsoft.com, it says "Freedom$oft provides an all-in-one software solution for real estate investors making it easy to get leads, stay organized, and close more deals using powerful, fully-integrated marketing systems."

18. Freedomsoft is the "Only All-In-One, Push-Button System for Real Estate Investing."

19. Further, Freedomsoft advertises its "Automated Leads Dashboard" and "Unlimited Workflow Automation."

20. Freedomsoft advertises that it has "8,000,000 Motivated Seller Leads" as part of the platform it sells for $197 per month.

21. The "catch" is that Freedomsoft portrays these "Motivated Seller Leads" as people that have consented to be contacted – but that is anything but true.

22. The "leads" Freedomsoft provides are actually just consumer records downloaded from unknown databases.

23. In its demonstration video, a Freedomsoft representative named Rob Swanson, believed to be the owner of the company, ran a demonstration of the software.

24. First, Mr. Swanson ran a search of public records of homeowners with vacancies and downloaded 209 contacts directly into its Freedomsoft customer relationship manager dashboard.

25. Then, Mr. Swanson clicked on "Add All" to create a campaign to store those 209 people. ("Campaign").

26. Mr. Swanson then clicked the "Leads Dashboard," where Freedomsoft shows the public records as "leads" to be targeted by mass text.

27. The first set of records did not contain telephone numbers, so an additional public records search was necessary to begin texting leads.

28. Next, the software performed a "batch skip-trace" of the 209 people in the Campaign to attempt to locate their telephone numbers.

29. Having performed a skip trace, Freedomsoft successfully imported 120 of the 209 phone numbers into the Campaign and matched those phone numbers to the public records data.

30. Then, Mr. Swanson created a message under Freedomsoft's "Broadcast SMS" feature, where the text of a message could be entered and then sent to the people in the Campaign.

31. Mr. Swanson called the next process "generating inbound leads."

32. In a series of wizard steps, Mr. Swanson clicked on "SMS Broadcast" and then "Compose Broadcast."

33. Then he selected the Campaign he created earlier from a dropdown menu.

34. Freedomsoft was then able to send out the text approximately one hundred times by having the user rapidly clicking on the "Send" box.

35. To increase the speed of its texting, the software automatically refreshed part of the screen so the next person in the Campaign could be texted without moving the mouse, retyping the text of the message, or even typing a single phone number.

36. Thus, to rapidly send texts to downloaded numbers, the mouse could be quickly clicked repeatedly in the same spot because the screen refreshed to move up the Send box for the next person in the Campaign after each click.

37. Mr. Swanson said on the demo that it took him "almost no time" to text 100 people.

38. Mr. Swanson then explained that sending texts in this manner is legal because "it requires human intervention."

39. It was not clear how or if Freedomsoft segregated out cellular, residential or business phones, to ensure that they were only texting cell phones, as opposed to residential or business phones.

40. It was also not clear how or if Freedomsoft checked to ensure it was not texting numbers on the state and federal Do Not Call lists.

41. Unfortunately, Defendants failed to obtain consent from Plaintiff and the Class before repeatedly sending out the messages.

42. Mr. Swanson said you can get people responding to your campaign in "mere minutes."

43. Indeed, people did respond, but some were not happy.

44. Some responses Mr. Swanson received in the demonstration video showed how reckless Defendants' methods were.

45. Three of the responses from confused recipients said:

   a. "I don't own a house I'm 15 I live with my mom."
   b. "Wrong number"
   c. "Who DIS"

**JRX USED FREEDOMSOFT TO SKIP TRACE AND MASS TEXT THE CLASS**

46. Defendants JRX used Freedomsoft to send hundreds or thousands of texts to Plaintiff and the Class without their consent.

47. Prior to discovery, Plaintiff is not privy to the exact manner Defendants used Freedomsoft to text Plaintiff and the Class.

48. However, upon information and belief, JRX sent its mass texts in a similar manner as explained in the Freedomsoft demonstration video as follows:

49. First, JRX used Freedomsoft to download the names and addresses of Plaintiff and the Class from unknown databases and added those people into a Campaign.

50. Next, JRX used Freedomsoft's skip-tracing feature to obtain phone numbers of the people in the Campaign.

51. JRX then imported the list of Plaintiff and the Class' phone numbers to the Campaign.

52. JRX then drafted a text message that would be texted to Plaintiff and the Class.

53. Prior to sending, Freedomsoft displayed the compiled Campaign, including the text of the message and a list of all the recipients to be texted.

54. To execute the campaign, JRX clicked repeatedly on the "Send" button to send its prepared advertisement to Plaintiff and the Class.

55. JRX sent the messages using Freedomsoft, which is an automatic telephone dialing system, ("ATDS") in violation of the TCPA.

### FACTS SPECIFIC TO PLAINTIFF LAWRENCE PASCAL

56. On May 13, 2019, at 11:41 a.m., Plaintiff received a text from Defendant JRX using Freedomsoft from the phone number 901-350-5059.

57. The text message that Plaintiff received said "11.6 CAP, Cheap Cashflow w/ Easy Fix – Brick/Frame – 3bd/1ba, 1020sqft, Call Jason for details + pics.  901-350-5059."

58. JRX sent the message using Freedomsoft, which is an ATDS.

59. Plaintiff never consented to receive text messages from Defendants.

### CLASS ALLEGATIONS

60. **Class Definitions**: Plaintiff brings this action pursuant to Federal Rule of Civil Procedure 23(b)(1), 23(b)(2), and/or 23(b)(3) on behalf of Plaintiff and the following Class and Subclasses:

> **TCPA Class**. All persons in the United States who: (1) from the last 4 years to present (2) received at least one text message; (3) on his or her cellular or residential telephone; (4) that was texted using Freedomsoft; (5) for the purpose of promoting Defendants' services; (6) where Defendants did not have any record of prior express written consent to send such a text at the time it was sent.

> **UCL Subclass**. All persons in California who: (1) from the last 4 years to present (2) whose phone number was downloaded from public sources (3)

received at least one text message; (4) that was texted using Freedomsoft; (5) for the purpose of promoting Defendants' services; (6) where Defendants did not have consent.

**Negligence Subclass**. All persons in California who: (1) from the last 4 years to present (2) whose phone number was downloaded from public sources (3) received at least one text message; (4) that was texted using Freedomsoft; (5) for the purpose of promoting Defendants' services; (6) where Defendants did not have consent.

61. The following people are excluded from the Class and Subclasses: (1) any Judge or Magistrate presiding over this action and members of their families; (2) Defendants, Defendants' subsidiaries, parents, successors, predecessors, and any entity in which the Defendants or its parents have a controlling interest and its current or former employees, officers and directors; (3) persons who properly execute and file a timely request for exclusion from the Class and Subclasses; (4) persons whose claims in this matter have been finally adjudicated on the merits or otherwise released; (5) Plaintiff's counsel and Defendants' counsel; and (6) the legal representatives, successors, and assigns of any such excluded persons.

62. **Numerosity**: The exact number of the members of the Class and Subclasses is unknown and not available to Plaintiff, but it is clear that individual joinder is impracticable. On information and belief, Defendants sent texts to hundreds or thousands of consumers who fall into the definition of the Class and Subclasses. Members of the Class and Subclasses can be identified through Defendants' records.

63. **Typicality**: Plaintiff's claims are typical of the claims of other members of the Class and Subclasses, in that Plaintiff and members of the Class and Subclasses sustained damages arising out of Defendants' uniformly wrongful conduct.

64. **Adequate Representation**: Plaintiff will fairly and adequately represent and protect the interests of the other members of the Class and the Subclasses. Plaintiff's claims are made in a

representative capacity on behalf of the other members of the Class and Subclasses. Plaintiff has no interests antagonistic to those of the other members of the proposed Class and Subclasses and is subject to no unique defenses. Plaintiff has retained competent counsel to prosecute the case on behalf of Plaintiff and the proposed Class and Subclasses. Plaintiff and Plaintiff's counsel are committed to vigorously prosecuting this action on behalf of the members of the Class and Subclasses and have the financial resources to do so.

65. **Policies Generally Applicable to the Class**: This class action is appropriate for certification because Defendants have acted or refused to act on grounds generally applicable to the Class and Subclasses as a whole, thereby requiring the Court's imposition of uniform relief to ensure compatible standards of conduct toward the members of the Class and Subclasses and making final injunctive relief appropriate with respect to the Class and Subclasses as a whole. Defendants' practices challenged herein apply to and affect the members of the Class and Subclasses uniformly, and Plaintiff's challenge of those practices hinge on Defendants' conduct with respect to the Class and Subclasses as a whole, not on facts or law applicable only to Plaintiff.

66. **Commonality and Predominance**: There are many questions of law and fact common to the claims of Plaintiff and the Class and Subclasses, and those questions predominate over any questions that may affect individual members of the Class and Subclasses. Common questions for the Class and Subclasses include, but are not necessarily limited to the following:

   i.      Whether Defendants' conduct violated the TCPA;

   ii.     Whether Defendants' conduct violated the TCPA *willingly* and/or *knowingly*;

   iii.    Whether Defendants obtained consent prior to texting any members of the Class and Subclasses;

   iv.    Whether Defendants employed a skip trace method to locate the phone numbers it texted;

v.        Whether Freedomsoft is an automatic telephone dialing system;

vi.       Whether members of the Class are entitled to treble damages based on the *knowingness* or *willfulness* of Defendants' conduct.

vii.      Whether Defendants' conduct violated the "Unfair" prong of California's Unfair Competition Law;

viii.     Whether Defendants' conduct constitutes negligence.

67.       **Superiority**: This case is also appropriate for class certification because class proceedings are superior to all other available methods for the fair and efficient adjudication of this controversy as joinder of all parties is impracticable. The damages suffered by the individual members of the Class and Subclasses will likely be relatively small, especially given the burden and expense of individual prosecution of the complex litigation necessitated by Defendants' actions. Thus, it would be virtually impossible for the individual members of the Class and Subclasses to obtain effective relief from Defendants' misconduct. Even if members of the Class and Subclasses could sustain such individual litigation, it would still not be preferable to a class action, because individual litigation would increase the delay and expense to all parties due to the complex legal and factual controversies presented in this First Amended Complaint. By contrast, a class action presents far fewer management difficulties and offers the benefits of a single adjudication, economy of scale, and comprehensive supervision by a single Court.  In addition, a class action also takes advantage of economies of time, effort and expense, and ensures uniformity of rulings and decisions.

**FIRST CAUSE OF ACTION**
**Violation of 47 U.S.C. § 227**
**The Telephone Consumer Protection Act of 1991**
**(On behalf of Plaintiff and the TCPA Class)**

68.       Plaintiff incorporates the foregoing allegations as if fully set forth herein.

69. Defendants downloaded the names and addresses of Plaintiff and the Class from public records.

70. Then Defendants performed a skip trace on Plaintiff and the Class to append their phone numbers to the downloaded records.

71. Defendants sent text messages to the residential and cellular telephones of Plaintiff and the Class.

72. Defendants never even thought of requesting consent from Plaintiff and the Class prior to blasting out its messages.

73. Defendants did this using Freedomsoft, which is an automatic telephone dialing system ("ATDS") under 47 U.S.C. § 227(a)(1) and *Marks v. Crunch San Diego*, 904 F.3d 1041, 1052-53 (9th Cir 2018).

74. Freedomsoft has the ability to download and store phone numbers, build its text message Campaigns, and then send texts to hundreds or thousands of people in minutes, without consent, and with only a modicum of human intervention.

75. Freedomsoft advises its client that sending these unwanted mass texts is the way to "generate incoming leads."

76. Freedomsoft's features are so automated that once a user creates a Campaign, it can send mass texts to hundreds or thousands of people without having to reenter the message or type a single phone number.

77. Congress recognized that an ATDS, like any machine, could not operate without some human intervention.

78. An ATDS "would seem to envision non-manual dialing of telephone numbers." *Marks*, 904 F.3d at 1052.

79. Freedomsoft constitutes an ATDS as proscribed by 47 U.S.C. §227(b)(1)(A)(iii) and (B).

80. Defendants' texts were sent for a commercial purpose.

81. As a result of its unlawful conduct, Defendants repeatedly invaded the personal privacy, of the Plaintiff and the Class, causing them to suffer damages and, under 47 U.S.C. § 227(b)(3)(B), entitling them to recover $500 in civil fines for each violation and an injunction requiring Defendants to stop their illegal texting Campaigns.

82. Defendants sent the violating texts "*willfully*" and/or "*knowingly*" under 47 U.S.C. § 227(b)(3)(C).

83. If the court finds that Defendants *willfully* and/or *knowingly* violated this subsection, the court may increase the civil fine from $500 to $1500 per violation under 47 U.S.C. § 227(b)(3)(C).

**SECOND CAUSE OF ACTION**
Count I of Unfair Violation of California Unfair Competition Law
Cal. Bus. & Prof. Code §17200.
(Against all Defendants)
(on behalf of Plaintiff and the UCL Subclass)

84. Plaintiff incorporates the foregoing allegations as if fully set forth herein.

85. The "Unfair" prong of California's Unfair Competition Law prohibits unfair business practices that either offend an established public policy or that are immoral, unethical, oppressive, unscrupulous or substantially injurious to consumers.

86. Freedomsoft has engaged in an unfair business practice of encouraging its software clients to amass phone numbers of unwitting consumers (who Freedomsoft misleadingly portrays as interested leads) and then text unsolicited messages *en masse*.

87. JRX has engaged in an unfair business practice of using Freedomsoft to download telephone numbers and then send unsolicited texts *en masse*.

88. These unfair practices offend California's public policy preference for California residents to be free from harassment by telemarketers texting without their consent.

89. Defendants' business practices are immoral, unethical, oppressive, unscrupulous, and substantially injurious to consumers.

90. The utility of Defendants' practices is very low and is vastly outweighed by the serious gravity of harm in the incursion into the privacy of Plaintiff and the UCL Subclass in receiving with spam text messages.

91. Accordingly, Plaintiff and the UCL Subclass are entitled to injunctive relief under this section.

**THIRD CAUSE OF ACTION**
Count II of Unfair Violation of California Unfair Competition Law
Cal. Bus. & Prof. Code §17200.
(Against Freedomsoft)
(on behalf of Plaintiff and the UCL Subclass)

92. Plaintiff incorporates the foregoing allegations as if fully set forth herein.

93. The "Unfair" prong of California's Unfair Competition Law prohibits unfair business practices that either offend an established public policy or that are immoral, unethical, oppressive, unscrupulous or substantially injurious to consumers.

94. Freedomsoft has engaged in an unfair business practice of giving legal advice without a license by advising its clients that using their software in the manner described herein is legal, when making such a statement is not possible to be made without an attorney's sophisticated legal analysis.

95. Defendants' business practices are immoral, unethical, oppressive, unscrupulous, and substantially injurious to consumers.

96. The utility of Freedomsoft's practices is very low and is vastly outweighed by the serious gravity of harm in the incursion on the privacy of Plaintiff and the UCL Subclass in having their phone spammed.

97. Plaintiff and the UCL Subclass have incurred actual damages as a result of Freedomsoft's unfair business practices.

98. Plaintiff and the UCL Subclass are entitled to injunctive relief under this section.

### FOURTH CAUSE OF ACTION
Negligence
(Against all Defendants)
(on behalf of Plaintiff and the Negligence Subclass)

99. Plaintiff incorporates the foregoing allegations as if fully set forth herein.

100. Defendants had a duty to use due care while texting Plaintiff and the Negligence Subclass.

101. Defendants breached that duty by downloading their phone numbers and texting its advertisement to the phones of Plaintiff and the Negligence Subclass without their consent.

102. Defendants did not check for accuracy of its downloaded phone numbers or otherwise confirm it was even a cell phone prior to recklessly sending its text to hundreds or thousands of people.

103. Defendants breach was the proximate or legal cause of Plaintiff's injury.

104. Plaintiff and the Negligence Subclass have incurred actual damages.

### PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff LAWRENCE PASCAL, individually and on behalf of the Class, prays for the following relief:

A. An order certifying the Class and Subclasses as defined above, appointing Plaintiff LAWRENCE PASCAL as the representative of the Class and Subclasses and appointing Plaintiff's counsel as Counsel for the Class and Subclasses;

B. An order declaring that Defendants' actions, as set out above, violate the TCPA;

C. An order declaring that Defendants' actions, as set out above, *willfully* and *knowingly* violate the TCPA;

D. An order declaring that Defendants' actions, as set out above, violate the "Unfair" prong of California's Unfair Competition Law;

E. An order declaring that Defendants' actions, as set out above, constitute negligence;

F. An injunction requiring Defendants to cease sending unlawful text messages using Freedomsoft, and otherwise protecting interests of the Class and Subclasses;

G. An award of actual and/or statutory damages and penalties;

H. Such other and further relief that the Court deems reasonable and just.

## JURY DEMAND

Plaintiff requests a trial by jury of all claims that can be so tried.

Dated: September 16, 2019

                                          Respectfully submitted,

                                          LAWRENCE PASCAL, individually and on behalf of all others similarly situated,

                                          By: /s/ Mark L. Javitch                .

Mark L. Javitch (California SBN 323729)
Javitch Law Office
480 S. Ellsworth Ave.
San Mateo CA 94401
Tel: 650-781-8000
Fax: 650-648-0705
mark@javitchlawoffice.com

*Attorney for Plaintiff*
and the Putative Class

FIRST AMENDED CLASS ACTION COMPLAINT