Mark L. Javitch (CA SBN 323729)
Javitch Law Office
480 S. Ellsworth Ave
San Mateo, CA 94401
Telephone: 650-781-8000
Facsimile: 650-648-0705
mark@javitchlawoffice.com
*Attorney for Plaintiff*
*and those similarly situated*

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

### OAKLAND DIVISION

| | |
|---|---|
| LAWRENCE PASCAL, individually and on behalf of all others similarly situated | Case Number: <u>4:19-cv-03382-HSG</u> |
| | Hon. Haywood S. Gilliam, Jr. |
| Plaintiff, | **<u>OPPOSITION TO FREEDOMSOFT303 LLC'S MOTION TO DISMISS</u>** (Dkt. 38) |
| vs. | |
| JRX CAPITAL LLC, a Colorado limited liability company, FREEDOMSOFT303 LLC, a Colorado limited liability company | |
| Defendants. | |

# TABLE OF CONTENTS

PAGE(S)

TABLE OF AUTHORITIES……………………………………………………..…iii

I.     INTRODUCTION…………………………………………………………1

II.    FACTUAL BACKGROUND…...………………………………………………1

III.   PROCEDURAL HISTORY……………………………………………………1

IV.    LEGAL STANDARD……………………………………………………...2

V.     LEGAL ARGUMENT………………………………………………...3

       A.     Plaintiff states a claim under the TCPA………..………………………3

              i.     An ATDS is plausibly alleged……………………………………3

              ii.    Freedomsoft is an ATDS under *Marks*……………………………...4

       B.     Freedomsoft is liable for JRX's TCPA violation………………………………4

              i.     Freedomsoft is Directly Liable………………………………………5

              ii.    Freedomsoft is Indirectly Liable……………………………………6

              iii.   Freedomsoft is Liable under Actual Authority……………………...7

              iv.    Freedomsoft is Liable under Apparent Authority…………………………8

              v.     Freedomsoft is Liable under Ratification…………………………………9

              vi.    Freedomsoft is Liable under Joint Enterprise…..…………………………10

              vii.   Freedomsoft is Liable under Acting in Concert...…………………………11

       C.     Plaintiff has standing to bring a § 17200 Claim………………………..……11

              i.     Plaintiff is currently suffering economic injury…………………………...12

              ii.    Plaintiff also has standing because the Legislature identified this harm…..13

       D.     Plaintiff states a claim for Negligence……………………….....……………13

       E.     This Court has Personal Jurisdiction over Freedomsoft………………………15

              i.     Defendants Purposefully Directed Activity towards California…………..15

              ii.    The Dispute is Directly Related to Freedomsoft's Actions………………..18

              iii.   The Exercise of Jurisdiction is Reasonable………………………………18

VI.    CONCLUSION…………………………………………………………...…

# **TABLE OF AUTHORITIES**

**Cases**

Supreme Court Authorities

*Ashcroft v. Iqbal,*
    556 U.S. 662, 678 (2009)………………………………………………………..2

*Bell Atlantic Corp. v. Twombly,*
    550 U.S. 544, 570 (2007)…..………………………………………………….…..2

Circuit Court Authorities

*ACA Int'l v. FCC,*
    885 F.3d 687, 703 (D.C. Cir. 2018)…………………………………………….4

*American Cas. Co. v. Krieger,*
    181 F.3d 1113, 1121 (9th Cir. 1999)………………………………………...…6

*Ballard v. Savage,*
    65 F.3d 1495, 1498 (9th Cir. 1995)……………………………………………..2

*Caruth v. Int'l Psychoanalytical Ass'n,*
    59 F.3d 126, 129 (9th Cir. 1995)……………………………………………...20

*CollegeSource, Inc. v. AcademyOne, Inc.,*
    653 F3d 1066, 1080 (9th Cir 2011)…………………………………………….19

*Cubbage v. Merchent,*
    744 F.2d 665, 667 (9th Cir.1984)……………………………………………….2

*Data Disc, Inc. v. Systems Tech. Assoc., Inc.,*
    557 F.2d 1280, 1285 (9th Cir. 1977)…………………………………………….2

*Dole Food Co. v. Watts,*
    303 F.3d 1104, 1117 (9th Cir. 2002)…………………………………………..20

*Harris Rutsky & Co. Ins. Servs., Inc. v. Bell & Clements Ltd.,*
    328 F.3d 1122, 1129 (9th Cir. 2003)……………………………………………3

*Manzarek v. St. Paul Fire & Marine Ins. Co.,*
    519 F.3d 1025, 1031 (9th Cir. 2008)…..………………………………………..2

*Marks v. Crunch San Diego, LLC,*
    904 F.3d 1041, 1052 (9th Cir. 2018)…………………………….................4

*Mavrix Photo Inc. v. Brand Techs. Inc.,*
    647 F.3d 1218, 1228 (9th Cir. 2011)…….…………………………….…….17

OPP. TO MOTION TO DISMISS         CASE NO.: <u>4:19-cv-03382-HSG</u>

*Meyer v. Portfolio Recovery Assocs.*,
    707 F.3d 1036, 1043 (9th Cir. 2012)…………………………………………………3

*Panavision Int'l, L.P. v. Toeppen*,
    141 F.3d 1316, 1323 (9th Cir. 1998)………………………………………………20

*Salyers v. Metro. Life Ins. Co.*,
    871 F.3d 934, 940 (9th Cir. 2017)…………………………………………………8

*Satterfield v. Simon & Schuster, Inc*.,
    569 F.3d 946, 951 (9th Cir. 2009)……………………………………….......3

*Schwarzenegger v. Fred Martin Motor Co.*,
    374 F.3d 797, 801 (9th Cir. 2004)…………………………………………15

*Sinatra v. National Enquirer, Inc*.,
    854 F.2d 1191, 1195 (9th Cir. 1988)………………………………………18

*Van Patten v. Vertical Fitness Grp., LLC*,
    847 F.3d 1037, 1043 (9th Cir. 2017)…………………………………………3

<u>District Court Authorities</u>

*Baker v. Caribbean Cruise Line, Inc.,*
    Case No. CV 13-8246-PCT-PGR, 2014 U.S. Dist. LEXIS 28960,
    2014 WL 880634 (D. Ariz. Mar. 6, 2014)……………………………………17

*Banks v. Pro Custom Solar*,
    Case No. 17-CV-613, 2018 U.S. Dist. LEXIS 128182,
    2018 WL 3637960, (E.D.N.Y. July 31, 2018)…………………………………9

*Bowoto v. Chevron Texaco Corp*.,
    312 F. Supp. 2d 1229, 1247 (N.D. Cal. 2004)……………………………………10

*Brown v. Collections Bureau of Am., Ltd*,
    183 F. Supp. 3d 1004, 1005 (N.D. Cal. 2016)…………………………………..2

*Cour v. Life360, Inc*.,
    Case No. 16-CV-00805-TEH, 2016 WL 4039279 (N.D. Cal. July 28, 2016)…………..5

*Deeba Abedi v. New Age Med. Clinic PA*,
    Case No. 1:17-CV-1618, 2018 U.S. Dist. LEXIS 105932,
    2018 WL 3155618 (E.D. Cal. 2018)……………………………………...16

*Drew v. Lexington Consumer Advocacy*,
    Case No. 16-cv-200-LB, 2016 U.S. Dist. LEXIS 188997,
    2016 WL 9185292 (N.D. Cal. Aug. 11, 2016)……………………………………16

*Franklin v. Upland Software, Inc.*,
  Case No. 1-18-CV-00236-LY,
  2019 WL 433650 (W.D. Tex. Feb. 1, 2019)……………………………………………5-6

*Long v. Authentic Athletix LLC*,
  Case No. 16-cv-03129-JSC, 2016 U.S. Dist. LEXIS 142729,
  2016 WL 6024591 (N.D. Cal. Oct. 14, 2016)……………………………………………18

*Meeks v. Buffalo Wild Wings, Inc.*,
  Case No. 17-cv-07129-YGR,
  2018 U.S. Dist. LEXIS 52328 (N.D. Cal. Mar. 28, 2018)………………………………5

*Melingonis v. Network Commc'ns Int'l Corp.*,
  Case No. 10 CV 1364 MMA NLS, 2010 U.S. Dist. LEXIS 125348,
  2010 WL 4918979 (S.D. Cal. Nov. 29, 2010)……………………………………………..5

*Moser v. Health Ins. Innovations, Inc.*,
  Case No. 3:17-CV-1127-WQH-KSC, 2018 U.S. Dist. LEXIS 3237,
  2018 WL 325112 (S.D. Cal. Jan. 5, 2018)………………………………………16, 18, 21

*Heidorn v. BDD Marketing & Mgmt. Co.*,
  Case No. 13-00229, 2013 U.S. Dist. LEXIS 177166,
  2013 WL 6571629 (N.D. Cal. Aug. 19, 2013)…………………………………………...17

*j2Global Communications, Inc., v. Blue Jay, Inc.*,
  Case No. 08-4254, 2009 U.S. Dist. LEXIS 1616,
  2009 WL 29905, *29 (N.D. Cal. Jan. 5, 2009)……………………………………...19-20

*Lushe v. Verengo Inc.*,
  Case No. CV 13-07632, 2014 U.S. Dist. LEXIS 157124, 2014 WL 5794627
  (CD. Cal. Oct. 22, 2014)………………………………………………………………..8-10

*Shuckett v. DialAmerica Mktg. Inc.*,
  Case No. 17cv2073, 2019 U.S. Dist. LEXIS 29598, 2019 WL 913174,
  (S.D. Cal. Feb. 22, 2019)………………………………………………………6, 8, 10

*Drew v. Lexington Consumer Advocacy*,
  2016 U.S. Dist. LEXIS 188997, 2016 WL 9185292,
  at *6 (N.D. Cal. Aug. 11, 2016)……………………………………………………7-9

*Franklin v. Ocwen Loan Servicing, LLC*,
  2017 WL 4922380, at *3 (N.D. Cal. Oct. 31, 2017)………………………………13-14

*Ott v. Mortg. Invs. Corp. of Ohio, Inc.*,
  65 F. Supp. 3d 1046, 1057 (D. Or. 2014)………………………………………17, 19-20

OPP. TO MOTION TO DISMISS                    CASE NO.: 4:19-cv-03382-HSG

Page v

*Rinky Dink Inc. v. Elec. Merchant Sys. Inc.*,
    Case No. C13-1347-JCC, 2014 U.S. Dist. LEXIS 161497,
    2014 WL 5880170 (W.D. Wash. Sept. 30, 2014)....................................17, 19-21

*Garcia v. Ocwen Loan Servicing, LLC*,
    2017 U.S. Dist. LEXIS 181337, 2017 WL 8222634,
    at *4 (C.D. Cal. Oct. 31, 2017)...........................................................14

*Ewing v. McCarthy*,
    Case No. 3:17-cv-1554, 2017 U.S. Dist. LEXIS 177203,
    2017 WL 4810098, (S.D. Cal. Oct. 25, 2017)....................................15

*Luna v. Shac*, LLC,
    122 F. Supp. 3d 936, 939 (N.D. Cal. 2015)........................................3

*McCabe v. Caribbean Cruise Line, Inc.*,
    Case No. 13-CV-6131, 2014 U.S. Dist. LEXIS 91116, 2014 WL 3014874,
    (E.D.N.Y. July 3, 2014)...................................................................6

*Dobkin v. Enter. Fin. Grp., Inc.*,
    Case No. 2:14-CV-01989 WHW, 2014 U.S. Dist. LEXIS 123317,
    2014 WL 4354070, (D. NJ Sep. 3, 2014) ..........................................7

*Cunningham v. Rapid Response Monitoring Servs.*,
    251 F. Supp. 3d 1187, 1199 (M.D. Tenn. 2017)...................................7

*Charvat v. Allstate Corp.*,
    29 F. Supp. 3d 1147, 1150-51 (N.D. Ill. 2014)....................................8

*Montegna v. Ocwen Loan Servicing, LLC*,
    2017 U.S. Dist. LEXIS 172713, 2017 WL 4680168,
    at *4 (C.D. Cal Oct. 31, 2017)..........................................................14

*Baird v. Sabre Inc.*,
    Case No. 2:13-cv-00999-SVW-JPR,
    2013 U.S. Dist. LEXIS 198909 (C. D. Cal May 8, 2013).......................13

*Castillo v. Caesars Entm't Corp.*,
    Case No. 18-CV-05781-EMC,
    2018 WL 6199682, (N.D. Cal. Nov. 28, 2018)............................15, 17

*Naiman v. TranzVia LLC*,
    Case No. 17-CV-4813-PJH, 2017 WL 5992123, (N.D. Cal. Dec. 4, 2017)..........15, 17

*Figueroa v. Everalbum, Inc.*,
    Case No. 4:17-CV-1393 RLW,
    2017 WL 4574797, (E.D. Mo. Oct. 12, 2017))....................................15

OPP. TO MOTION TO DISMISS        CASE NO.: <u>4:19-cv-03382-HSG</u>

*Morris v. SolarCity Corp.*,
  2016 WL 1359378, at \*3 (N.D. Cal. Apr. 6, 2016)…………………………………..3

*Quinones v. Ocwen Loan Servicing, LLC*,
  282 F. Supp. 3d 1207, 1213 (C.D. Cal. 2017)…………………………………14

*Ramsden v. Ocwen Loan Servicing, LLC*,
  2018 WL 6038285, at \*4 (C.D. Cal. Jul. 25, 2018)……………………….....13-14

*Ryan v. Jersey Mike's Franchise Sys*.,
  2014 U.S. Dist. LEXIS 42677, 2014 WL 1292930,
  at \*12 (S.D. Cal. Mar. 28, 2014)……………………………………………12

**State Court Authorities**

*Lindner v. Friednash*,
  160 Cal. App. 2d 511, 517 (1958)……………………………………..11

*Kelley v. R.F. Jones Co*.,
  272 Cal. App. 2d 113 (Ct. App. 1969)………………………………...6

*Dillon v. Legg*,
  68 Cal.2d 728, 734 (1968)………………………………………..14

*Hayes v. Cty. of San Diego*,
  57 Cal.4th 622, 629 (2013)………………………………………14

*Law Offices of Mathew Higbee v. Expungement Assistance Services*,
  214 Cal.App.4th 544, 561 (2013)………………………………...11

*Block v.D. W. Nicholson Corp*.,
  77 Cal.App.2d 739, 744-45……………………………………....11

*Sindell v. Abbott Laboratories*,
  26 Cal. 3d 588, 604 (1980)……………………………….......11

*Kwikset Corp. v. Superior Court*,
  51 Cal. 4th 310 (2011)……………………………………...11, 12

**Statutes**

47 U.S.C. §227…..……………………………...…………….………........passim

California Business & Professions Code § 17538.41………………………….…13

**Rules**

Fed. R. Civ. P. 8(a)(2) ……………………………………………..............................2

Fed. R. Civ. P. 12(b)(6). ……………………………………………...........................2

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

OPP. TO MOTION TO DISMISS                    CASE NO.: <u>4:19-cv-03382-HSG</u>

Pursuant to L-R 7-4, Plaintiff Lawrence Pascal respectfully submits the following Memorandum of Points and Authorities in opposition to the Motion to Dismiss filed by Defendant Freedomsoft303 LLC (Dkt. 31) ("Freedomsoft").

### STATEMENT OF ISSUES TO BE DECIDED

1. Whether Plaintiff's first cause of action for violation of the Telephone Consumer Protection Act ("TCPA") states a valid claim against Defendants.

2. Whether Plaintiff's second cause of action for violation of the Unfair Prong of California's Unfair Competition Law, Cal. Bus. & Prof. Code § 17200, ("§ 17200") states a valid claim against Defendants.

3. Whether Plaintiff's third cause of action for violation of the Unfair Prong of § 17200 states a valid claim against Freedomsoft303 LLC.

4. Whether Plaintiff's fourth cause of action for negligence states a valid claim against Defendants.

## I. INTRODUCTION

Unwanted mass texting raises the exact concerns Congress had when it passed the TCPA. Freedomsoft's position that it should be allowed to encourage its customers to download and send unsolicited texts *en masse* without limit is untenable. Freedomsoft cannot be permitted to encourage and facilitate these violations.

## II. FACTUAL BACKGROUND

Plaintiff encountered Defendant Freedomsoft303, LLC ("Freedomsoft") when his contact information was downloaded and texted using automated software in violation of the Telephone Consumer Protection Act, 47 U.S.C. § 227. Defendant JRX buys and sells real estate. (Dkt. 20, ¶ 24) ("First Amended Complaint" or "FAC."). Defendant Freedomsoft (with JRX, "Defendants") creates software that encourages real estate investors to download contact information from public records and send text messages to the harvested list *en masse*. On May 13, 2019, JRX used Freedomsoft to obtain and download Plaintiff and the Class' contact information. Then Defendants texted their phones without permission (FAC, ¶¶ 17-39). Plaintiff and the Class had no relationship with Defendants. (FAC, ¶ 41). Defendants never attempted to obtain consent prior to texting Plaintiff and the Class. (FAC, ¶¶ 41-45).

## III. PROCEDURAL HISTORY

On June 13, 2019, Plaintiff filed the Complaint against JRX seeking to represent the Class who were texted by JRX without consent. (FAC, ¶ 60). On September 2, 2019, JRX responded to the Complaint by filing a motion to dismiss. (Dkt. 14.) On September 16, 2019, Plaintiff filed its FAC, adding claims for California's Unfair Competition Law and negligence and naming Defendant Freedomsoft. (Dkt. 20). On September 30, 2019, JRX filed a motion to dismiss the FAC. (Dkt. 31). On October 25, 2019, Freedomsoft also filed a motion to dismiss the FAC. (Dkt. 38).

## IV.   **LEGAL STANDARD**

### A.  **Motion to Dismiss for Failure to State a Claim**

Rule 8(a) requires a plaintiff to plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).   For purposes of ruling on a Rule 12(b)(6) motion, the Court "accept[s] factual allegations in the complaint as true and construe[s] the pleadings in the light most favorable to the nonmoving party." *Manzarek v. St. Paul Fire & Marine Ins. Co.*, 519 F.3d 1025, 1031 (9th Cir. 2008). [A] plaintiff need not somehow have inside knowledge of a defendant's operations and equipment to survive dismissal under Rule 12(b)(6), rather, he or she merely must proffer factual allegations that support a reasonable inference that an ATDS was used." *Brown v. Collections Bureau of Am., Ltd*, 183 F. Supp. 3d 1004, 1005 (N.D. Cal. 2016).

### B.  **Motion to Dismiss for Lack of Personal Jurisdiction**

Federal Rule of Civil Procedure 12(b)(2) governs dismissal for lack of personal jurisdiction. It is the plaintiff's burden to establish the court's personal jurisdiction over a defendant. *Cubbage v. Merchent*, 744 F.2d 665, 667 (9th Cir.1984). The court may consider evidence presented in affidavits to assist it in its determination and may order discovery on the jurisdictional issues. *Data Disc, Inc. v. Systems Tech. Assoc., Inc.*, 557 F.2d 1280, 1285 (9th Cir. 1977). "When a district court acts on a defendant's motion to dismiss without holding an evidentiary hearing, the plaintiff need make only a prima facie showing of jurisdictional facts to withstand the motion to dismiss." *Ballard v. Savage*, 65 F.3d 1495, 1498 (9th Cir.1995) (citations omitted).   In this context, prima facie showing is established if

plaintiff has produced admissible evidence which, if believed, would be sufficient to establish the existence of personal jurisdiction. *See Harris Rutsky & Co. Ins. Servs., Inc. v. Bell & Clements Ltd*., 328 F.3d 1122, 1129 (9th Cir. 2003).

## V.   <u>LEGAL ARGUMENT</u>

### A.  PLAINTIFF STATES A CLAIM UNDER THE TCPA

#### iv.    An ATDS is plausibly alleged

Plaintiff brings a claim under the TCPA which prohibits using an ATDS to text any telephone number assigned to a cellular telephone service without the recipient's consent. A plaintiff must show: "(1) the defendant [texted Plaintiff's] cellular telephone number; (2) using an automatic telephone dialing system; (3) without the recipient's prior express consent." *Meyer v. Portfolio Recovery Assocs*., 707 F.3d 1036, 1043 (9th Cir. 2012); *Van Patten v. Vertical Fitness Grp., LLC*, 847 F.3d 1037, 1043 (9th Cir. 2017) (TCPA also applies to text messages).

At the pleading stage of a TCPA case, a plaintiff need only allege facts supporting a plausible inference that the defendant is responsible for the illegal texts that the plaintiff allegedly received on its cellular telephones. *See Morris v. SolarCity Corp*., Case No. 15-cv-05107-RS, 2016 U.S. Dist. LEXIS 46748, 2016 WL 1359378, * 3 (N.D. Cal. Apr. 6, 2016) (Seeborg, J.). Whether a particular system constitutes an ATDS is a question of fact. *Satterfield v. Simon & Schuster, Inc*., 569 F.3d 946, 951 (9th Cir. 2009) (reversing district court's grant of summary judgment based on "genuine issue[s] of material fact whether this telephone system has the request capacity to be considered an ATDS under the TCPA").

Accordingly, Plaintiff has successfully pled that, with Freedomsoft's encouragement that its system was legal, (1) JRX texted Plaintiff on his cell phone (FAC, ¶¶ 56-58); (2) using Freedomsoft, an automatic telephone dialing system (FAC, ¶¶ 49-55, 58, 73-79); (3) the

message said: "11.6 CAP, Cheap Cashflow w/ Easy Fix –Brick/Frame – 3bd/1ba, 1020sqft, Call Jason for details + pics. 901-350-5059." (FAC, ¶ 57); and that (4) Defendants never requested consent prior to texting Plaintiff and the Class. (FAC, ¶ 59).

> v. Freedomsoft is an ATDS under *Marks*

Similar to the argument advanced by JRX in its motion to dismiss (Dkt. 31), Freedomsoft also argues here that its software is outside the scope of the TCPA because it does not satisfy the definition of an ATDS. (Dkt. 38, 9:5-10:2). But as demonstrated in Plaintiff's opposition to JRX's motion to dismiss, Plaintiff has plausibly alleged that Freedomsoft is indeed an ATDS under binding caselaw. (Dkt. 35, 9:21-17:13; FAC, ¶¶ 17-45).

The demonstration video for Freedomsoft states that one hundred texts could be sent in "almost no time." (FAC, ¶ 37). This is squarely within the TCPA's target of equipment that can engage in automatic dialing. *See Marks,* 904 F.3d at 1052 ("'automatic telephone dialing system,' 47 U.S.C. § 227(a)(1)—would seem to envision non-manual dialing of telephone numbers.") (citing *ACA Int'l v. FCC*, 885 F.3d 687, 703 (D.C. Cir. 2018)).

## B. FREEDOMSOFT IS LIABLE FOR JRX'S TCPA VIOLATION

Freedomsoft designed software that violates the TCPA and solicited customers, including JRX, to use its system. (FAC, ¶¶ 16-45). Freedomsoft advises its customers that downloading and texting phone numbers without permission is legal if done using its system. (FAC, ¶¶ 92-98). JRX did use Freedomsoft's system and violated Plaintiff's rights under the TCPA. (FAC, ¶¶ 46-59). Plaintiff has plausibly alleged a claim against JRX. (FAC, ¶¶ 68-81). Letting Freedomsoft off the hook when it was responsible for the entire design and operation of this TCPA-violating system would be unjust. Thus, Freedomsoft is also liable for the JRX's violation under the following principles.

### i.        Freedomsoft is Directly Liable

Freedomsoft argues that it cannot be held directly liable under the TCPA because they did not "make" or "initiate" the texts. (Dkt. 38, 17:10-19:11) (citing *Meeks v. Buffalo Wild Wings, Inc.*, Case No. 17-cv-07129-YGR, 2018 U.S. Dist. LEXIS 52328, *9 (N.D. Cal. Mar. 28, 2018). But Defendants' interpret the meaning of "make" and "initiate" too narrowly. *See, e.g., Melingonis v. Network Commc'ns Int'l Corp.*, Case No. 10 CV 1364 MMA NLS, 2010 U.S. Dist. LEXIS 125348, 2010 WL 4918979, at *5 (S.D. Cal. Nov. 29, 2010) (based on the "intentionally broad scope of the TCPA, it appears [d]efendant's alleged contact with [p]laintiff constitutes a 'call' as defined by the Ninth Circuit."

Defendants' citation to *Buffalo Wild Wings* does not demonstrate otherwise. In that case, the court determined Yelp did not "initiate" texts in a TCPA case because Yelp was merely the software platform that a restaurant used to send text messages selling the restaurant's services. *Buffalo Wild Wings*, 2018 U.S. Dist. LEXIS 52328, at *9. But Freedomsoft is not a passive platform compared to Yelp. In Buffalo, the app user decided whom to send the messages to. *Id.* at 11 ("The 'hostess,' not Yelp, obtained plaintiff's cellular phone number so that he could 'Check [his] place in line' and to notify plaintiff that his 'table was ready.") But here, Freedomsoft shows users whom to contact, and shows them how to contact them without permission. Freedomsoft encourages users to download lists of phone numbers it falsely claims are interested in being contacted, then create broadcast text campaigns that send messages *en masse* without even attempting to obtain consent. As explained, unlike Yelp, the entire Freedomsoft system is set up to send mass unconsented text messages.

For the same reasons, Freedomsoft's reliance on *Cour v. Life360, Inc.* and *Franklin v. Upland Software, Inc.*, is misplaced. (Dkt. 38, 19:1-11) (citing Case No. 16-CV-00805-TEH,

OPP. TO MOTION TO DISMISS                CASE NO.: <u>4:19-cv-03382-HSG</u>

2016 WL 4039279, at *4 (N.D. Cal. July 28, 2016); Case No. 1-18-CV-00236-LY, 2019 WL 433650, at *2 (W.D. Tex. Feb. 1, 2019), report and recommendation adopted, No. 1:18-CV-236-LY, 2019 WL 2745748 (W.D. Tex. Mar. 12, 2019)). The systems described in *Life360* were used to send messages to people with consent. *Life360*. at 10 ("Life360 users choose which of their contacts should receive an invitation and then press an 'invite' button before invitations are sent."); *Upland Software*, 2019 WL 433650, at *2 (the platform can "be used to send text messages to only those who have consented to receive them"). These platforms are similar to Yelp in that users are supposed to use it to contact people that they have permission to contact. This is unlike here, where Freedomsoft is designed to contact people they have no permission to contact.

### ii.    Freedomsoft is also indirectly liable for JRX's Violation

Freedomsoft may also be held liable for JRX's violation under agency principles for their involvement in building and operating the software facilitating JRX's violation. "[C]ourts in this circuit have routinely recognized that whether an agency relationship exists generally is a question of fact that is better suited to a motion for summary judgment than a motion to dismiss." *Shuckett v. DialAmerica Mktg. Inc*., Case No. 17cv2073, 2019 U.S. Dist. LEXIS 29598, 2019 WL 913174, *9-10 (S.D. Cal. Feb. 22, 2019) (internal quotations omitted). An agent's authority may be implied from the circumstances of a particular case and may be proved by circumstantial evidence. *Kelley v. R.F. Jones Co*., 272 Cal. App. 2d 113, 77 Cal. Rptr. 170, 174 (Ct. App. 1969). However, unless only one conclusion may be drawn, existence of an agency and the extent of an agent's authority is a question of fact and should not be decided on summary judgment. *American Cas. Co. v. Krieger*, 181 F.3d 1113, 1121 (9th Cir. 1999). "[T]raditional principles of vicarious liability apply to actions brought under the TCPA because any other interpretation would allow companies to evade TCPA

liability simply by creative contracting." *McCabe v. Caribbean Cruise Line, Inc*., Case No. 13-CV-6131, 2014 U.S. Dist. LEXIS 91116, 2014 WL 3014874, at *3 (E.D.N.Y. July 3, 2014) (internal quotations and citations omitted).

### iii. Freedomsoft is liable under actual authority.

The Restatement provides that "an agent acts with actual authority when, at the time of taking action that has legal consequences for the principal, the agent reasonably believes, in accordance with the principal's manifestations to the agent, that the principal wishes the agent so to act." Restatement (Third) of Agency § 2.01 (2006).

JRX's outsourcing of its robotexting to be conducted by Freedomsoft does not shield either party from TCPA liability. *See Dobkin v. Enter. Fin. Grp., Inc*., Case No. 2:14-CV-01989 WHW, 2014 U.S. Dist. LEXIS 123317, 2014 WL 4354070, at *10-11 (D. NJ Sep. 3, 2014) (holding that an "outsourcing arrangement in which [one defendant] had actual authority to sell [another defendant's] products through telemarketing calls" is indicative of an agency relationship); *Caribbean Cruise Line, Inc*., 2014 U.S. Dist. LEXIS 91116, at *10 (finding a plausible claim of vicarious liability where the plaintiff alleged that the disputed "robocall was made pursuant to a contract"); *Cunningham v. Rapid Response Monitoring Servs*., 251 F. Supp. 3d 1187, 1199 (M.D. Tenn. 2017) (finding a cognizable agency relationship where Plaintiff "alleged an unlawful telemarketing scheme the end result of which was the generation of business for [the defendant,]" despite the fact that Plaintiff "has not alleged every detail of the relationship between the [d]efendants" at the pleadings stage). *See Morris v. SolarCity Corp*., 2016 U.S. Dist. LEXIS 46748, 2016 WL 1359378, at *6 ("it is not [plaintiff's] burden at this juncture to come forward with allegations or evidence conclusively negating the possibility that [defendant] neither made the [texts] itself nor can be held indirectly liable. He has alleged facts from which [defendant's] direct or indirect liability

can be inferred." *See also Charvat v. Allstate Corp.*, 29 F. Supp. 3d 1147, 1150-51 (N.D. Ill. 2014) ("[I]t is defendants, not plaintiff, who can reasonably be expected to know these facts[.]"); *Dish Network*, 28 FCC Rcd 6574 at ¶ 46 (consumers may acquire evidence of relationship between telemarketer and seller through discovery if they are not independently privy to such information).

In contrast, here, Defendants both exercised control over one another. Freedomsoft designed the system to allow its users to download lists and send mass unconsented texts. JRX used the system and process set up by Freedomsoft. JRX then used and directed Freedomsoft to download contact information for Plaintiff and the Class and send out its desired text campaigns.

Although the terms of the contracts between Defendants and John Doe 1 are not the dispositive factor in determining actual authority, it would be premature to dismiss Plaintiff's actual authority claim without first considering these contracts. *See Shuckett*, 2019 WL 913174, 2019 U.S. Dist. LEXIS 29598, at *9 (What outsourced tasks telemarketer is "permitted to do (or restricted from doing)…depends in large part on its authorization to do so under the parties' contract.") (citation omitted). Plaintiff is not yet privy to the contract(s) Defendants have between themselves. *See Lushe v. Verengo Inc.*, Case No. CV 13-07632, 2014 U.S. Dist. LEXIS 157124, 2014 WL 5794627, at *20-21 (CD. Cal. Oct. 22, 2014) (denying defendant's summary judgment motion where defendant's outsourcing of its products' telemarketing created a jury issue on the existence of an agency relationship).

#### iv. Freedomsoft is liable under apparent authority

"Apparent authority results when the principal does something or permits the agent to do something which reasonably leads another to believe that the agent had the authority he purported to have." *Salyers v. Metro. Life Ins. Co.*, 871 F.3d 934, 940 (9th Cir. 2017). The

May 2013 FCC Ruling held that, even in the absence of evidence of a formal contractual relationship between the seller and the telemarketer, a seller is liable for telemarketing calls if the telemarketer "has apparent (if not actual) authority" to make the calls. 28 FCC Rcd at 6586 (¶ 34).

Apparent authority in the TCPA context can also be illustrated where telemarketers have access to detailed information regarding the nature and pricing of the seller's products and services or to the seller's customer information. 28 FCC Rcd at 6592 (¶ 46). The ability of the outside sales entity to enter consumer information into the seller's sales or customer systems, as well as the authority to use the seller's trade name, trademark and service mark may also be relevant. *Id.*

It appears to an outside observer, such as Plaintiff, that Freedomsoft, through its solicitation of customers to use its product, is granting JRX apparent authority to send text messages. *See Banks v. Pro Custom Solar*, Case No. 17-CV-613, 2018 U.S. Dist. LEXIS 128182, 2018 WL 3637960, at *2 (E.D.N.Y. July 31, 2018) (finding apparent authority, the court explained, "[f]rom the perspective of Plaintiff, Defendant's statements could reasonably give the appearance that Defendant, the purported principal, authorized [defendant], the purported agent, to initiate the Calls on its behalf." *See also Lushe*, 2014 U.S. Dist. LEXIS 157124, 2014 WL 5794627, at *20-21 (whether defendants were liable under apparent authority was an issue for the jury).

### v. Freedomsoft is liable under ratification

Freedomsoft is also vicariously liable through ratification. Under the Restatement (Third) of Agency, § 4.01 cmt. b, "Ratification is the affirmance of a prior act done by another, whereby the act is given effect as if done by an agent acting with actual authority."

"An affirmance of an unauthorized transaction can be inferred from a failure to repudiate it."
§ 94 of the Restatement (Second) of Agency.

Freedomsoft repeatedly earned profits by selling monthly subscriptions to customers like JRX that used it to send TCPA-violating texts. (*See* FAC, ¶ 20 (Freedomsoft advertises a subscription package for $197 per month supposedly containing 8 million motivated leads)). *See* Restatement (Third) of Agency § 4.01(1) cmt. d. (A principal ratifies the action of an agent if it "knowingly accepts the benefits of the transaction."). "Covering up the misdeeds of an agent can also constitute ratification." *Bowoto v. Chevron Texaco Corp*., 312 F. Supp. 2d 1229, 1247 (N.D. Cal. 2004). "Where the acts by the agent were not within the scope of the agency relationship, if they are not disavowed by the principal, failure to disavow may constitute ratification." *Id*. at 1248.

Freedomsoft ratified JRX's violation by accepting business from customers that use its platform for illegal texting, such as took place in this case. *See Abante Rooter & Plumbing, Inc. v. Alarm.com Inc.,* Case No. 15-CV-06314-YGR, 2018 U.S. Dist. LEXIS 132078, 2018 WL 3707283, at *15 (N.D. Cal. Aug. 3, 2018) (denying Defendant's motion for summary judgment because a "seller may be held liable for the acts of another under traditional agency principles if it ratifies those acts by knowingly accepting their benefits.") Accordingly, there is a triable issue on the question of ratification. *See Lushe*, 2014 U.S. Dist. LEXIS 157124, 2014 WL 5794627, at *20-21 (whether defendants ratified the TCPA violation created a jury issue); *Shuckett*, 2019 U.S. Dist. LEXIS 29598, 2019 WL 913174, at *10 (denying defendant's motion for summary judgment because it was an issue for the jury to determine whether the course of dealing among defendants constituted ratification of unlawful calls).

### vi. Freedomsoft is liable under Joint Enterprise

Freedomsoft solicits and encourages its customers, including JRX, to download and text phone numbers without consent in violation of the TCPA, all the while, advising customers the entire practice is legal. (FAC, ¶ 38). This reckless encouragement and facilitation of illegal activity may expose Freedomsoft to be liable for the TCPA violations of its customers as joint venturers. *See Lindner v. Friednash*, 160 Cal. App. 2d 511, 517 (1958) ("[A] joint adventurer may bind his associates by a contract which is in furtherance, or within the scope, of the joint enterprise" (internal citation and quotation marks omitted)); *Block v.D. W. Nicholson Corp.*, 77 Cal.App.2d 739, 744-45 ("The general rule as to the liabilities of joint adventurers to third persons is that: 'As to third persons who deal with a joint adventurer in good faith and without knowledge of any limitation upon his authority, the law presumes him to have been given power to bind his associates by such contracts as are reasonably necessary to carry on the business in which the joint adventurers are engaged...'"); *Taylor v. Shippers Transp. Exp., Inc*., Case No. 13-2092, 2014 U.S. Dist. LEXIS 180061, 2014 WL 7499046, at *3 (C.D. Cal. Sept. 30, 2014) (issues of fact prevent determining that defendants were not joint venturers).

### vii. Freedomsoft is liable under Acting in Concert

*Sindell v. Abbott Laboratories* holds that "those who, in pursuance of a common plan or design to commit a tortious act, actively take part in it, or further it by cooperation or request, or who lend or aid encouragement to the wrongdoer, or ratify and adopt his acts done for their benefit, are equally liable with him." 26 Cal. 3d 588, 604 (1980). (emphasis added) (citing Prosser, Law of Torts (4th ed. 1971) § 46, p. 292). Freedomsoft designs TCPA violating software and its customers, including JRX, use the software to direct Freedomsoft to create campaigns and send out the unsolicited texts. Their operations are intertwined and each profits from the other. Thus, under *Sindell*, Freedomsoft is liable under an Acting in Concert theory.

### C. PLAINTIFF HAS STANDING TO BRING A § 17200 CLAIM

To establish standing for a § 17200 claim, plaintiff must show that it personally lost money or property as a result of the allegedly unlawful business practices. *Kwikset Corp. v.*

*Superior Court*, 51 Cal. 4th 310 (2011). However, there "are innumerable ways in which economic injury from unfair competition may be shown. A plaintiff may (1) surrender in a transaction more, or acquire in a transaction less, than he or she otherwise would have; (2) have a present or future property interest diminished; (3) be deprived of money or property to which he or she has a cognizable claim; or (4) be required to enter into a transaction, costing money or property, that would otherwise have been unnecessary." *Id.* at 885-86. In addition, "the quantum of lost money or property necessary to show standing is only so much as would suffice to establish injury in fact." *Id.* at 886. In other words, it suffices to "allege[ ] some specific, identifiable trifle of injury." *Id.* (internal citation and quotation marks omitted). Because Plaintiff has suffered damages and is likely to continue to suffer damages traceable to Defendant's unfair business practice, Plaintiff has sufficiently alleged standing.

### i. Plaintiff is currently suffering economic injury

Similar to JRX's motion to dismiss, Freedomsoft now argues that Plaintiff does not have standing to pursue his claims for unfair business practices and negligence because he did not suffer economic injury. (Dkt. 38:19:12-20:11). But Plaintiff is currently experiencing ongoing costs in an attempt remove its contact information from the sources Defendants are using to text the Class without consent.

Plaintiff has asked Defendants to provide the names of the databases used to obtain Defendant's information so Plaintiff can request to be removed from those lists. But Defendants insist that their actions are legal and refuse to remove the contact information for Plaintiff and the Class from its lists.

Plaintiff and the Class have the right to privacy and do not want to be contacted in the future by Defendants. Plaintiff has not yet obtained the relief it desires and will be difficult to calculate this cost prior to trial. To provide additional detail, Plaintiff seeks leave to add

additional facts regarding its efforts thus far. Plaintiff believes that his information may have been obtained by Defendants through public records in Memphis, TN, so Plaintiff has sent first class letters each to the Shelby County Archives and Shelby County Register of Deeds. Plaintiff also purchased a subscription for $19.99 per month a service to "Remove Personal Info from Data Brokers" from a company called BrandYourself.com. The service says it will remove your sensitive personal information from the web and protect yourself from identity theft, hacks, spam, telemarketers and robocalls. Plaintiff has incurred these damages as a result of the unfair business practice contacting Plaintiff without permission. *See, e.g., Law Offices of Mathew Higbee v. Expungement Assistance Services*, 214 Cal.App.4th 544, 561 (2013) (an identifiable "trifle" satisfied standing inquiry).

> **ii.     Plaintiff also has standing because the legislature has identified this harm**

Because the legislature has specifically identified this harm, Plaintiff has standing to bring a claim under § 17200. California Business & Professions Code § 17538.41 prohibits a person from transmitting or causing to be transmitted a text message advertisement. Cal. Bus. & Prof. Code § 17538.41(a)(1). *See Ryan v. Jersey Mike's Franchise Sys.*, Case No. 13-CV-1427-BEN (WVG), 2014 U.S. Dist. LEXIS 42677, 2014 WL 1292930, at *12 (S.D. Cal. Mar. 28, 2014). As the legislature has identified this specific harm, courts have denied motions to dismiss under § 17200. *See Baird v. Sabre Inc.*, Case No. 2:13-cv-00999-SVW-JPR, 2013 U.S. Dist. LEXIS 198909, at *10 (C. D. Cal May 8, 2013) (denying motion to dismiss § 17200 claim based on § 17538.41).

### C. PLAINTIFF STATES A NEGLIGENCE CLAIM

To state a claim for negligence under California law, Plaintiff must allege that Defendants "(1) had a duty to use due care, that [it] (2) breached that duty, and that (3) the

breach was the proximate or legal cause of the (4) resulting injury." *Hayes v. Cty. of San Diego*, 57 Cal.4th 622, 629 (2013) (quotations omitted).

Plaintiff has successfully pled a distinct negligence claim. Defendants argue that no duty was owed to Plaintiff and the Class, despite that Defendants were texting their phones without permission. (Dkt. 31, 11:15-12:19). Plaintiff disagrees. Defendants had a duty to use due care while marketing to Plaintiff and specifically while texting Plaintiff's phone. (FAC, ¶ 100). *See Quinones v. Ocwen Loan Servicing, LLC*, 282 F. Supp. 3d 1207, 1213 (C.D. Cal. 2017) ("[Plaintiff] has adequately identified a duty of reasonable care that [Defendants] violated through [their] repeated collection calls"). "Whether a duty is owed is simply a shorthand way of phrasing what is the essential question -- whether the plaintiff's interests are entitled to legal protection against the defendant's conduct." *Dillon v. Legg*, 68 Cal.2d 728, 734 (1968) (internal quotations omitted) quoting from Prosser, Law of Torts (3d ed. 1964) pp. 332-333.

Defendants breached their duty by sending unsolicited spam without attempting to obtain consent. (FAC, ¶ 100). As discussed above, Plaintiff has incurred injury. *See Quinones*, 282 F. Supp. 3d at 1213 (recipient of voluminous phone calls "adequately identified" the duty that was violated). Here, as in *Quinones*, which upheld negligence as a distinct cause of action in a TCPA case, Plaintiff has identified a specific duty that was breached when Defendants sent mass texts to Plaintiff's and the Class' cell phones. *See e.g.*, *Garcia v. Ocwen Loan Servicing, LLC*, Case No. CV 17-3514-R, 2017 U.S. Dist. LEXIS 181337, 2017 WL 8222634, at *4 (C.D. Cal. Oct. 31, 2017) (declining to "rule out" existence of duty); *Montegna v. Ocwen Loan Servicing, LLC*, Case No. 17-CV-00939-AJB-BLM, 2017 U.S. Dist. LEXIS 172713, 2017 WL 4680168, at *4 (C.D. Cal Oct. 31, 2017) (a duty arises while calling Plaintiff).

### D. THIS COURT HAS PERSONAL JURISDICTION OVER FREEDOMSOFT

This court has specific, but not general, jurisdiction over Freedomsoft. Freedomsoft argues that JRX "sent" the message at issue, so none of JRX's texts can be attributed to Freedomsoft for the purposes of establishing specific personal jurisdiction. (Dkt. 38, 12:17-15:7). (citing *See, e.g., Castillo v. Caesars Entm't Corp*., Case No. 18-CV-05781-EMC, 2018 WL 6199682, at *3 (N.D. Cal. Nov. 28, 2018); *Naiman v. TranzVia LLC*, Case No. 17-CV-4813-PJH, 2017 WL 5992123, at *2 (N.D. Cal. Dec. 4, 2017), *Figueroa v. Everalbum, Inc*., Case No. 4:17-CV-1393 RLW, 2017 WL 4574797, at *2 (E.D. Mo. Oct. 12, 2017)).

Specific jurisdiction requires that: "(1) the nonresident defendant purposefully direct his activities or consummate a transaction with the forum or resident thereof; or perform some act by which he purposefully avails himself of the privilege of conducting activities in the forum; (2) the claim be one that arises out of or relates to the defendant's forum-related activities; and (3) the exercise of jurisdiction be reasonable." *Schwarzenegger v. Fred Martin Motor Co.*, 374 F.3d 797, 801 (9th Cir. 2004). Plaintiff bears the burden of satisfying the first two prongs of the test. *Id*. at 802.

#### i. Defendants purposefully directed their activity towards California

Under the effects test for purposeful availment, a defendant purposefully directs activity at a forum state when he "(1) commit[s] an intentional act, (2) expressly aimed at the forum state, (3) causing harm that the defendant knows is likely to be suffered in the forum state." *Schwarzenegger*, 374 F.3d at 805.

Here, the test for purposeful direction was satisfied when software run by and promoted by Freedomsoft was used by JRX to send unsolicited text messages to Plaintiff who was in California which resulted in the statutory TCPA violation. (FAC., ¶¶ 46-55). *See, e.g., Ewing*

*v. McCarthy*, Case No. 3:17-cv-1554, 2017 U.S. Dist. LEXIS 177203, 2017 WL 4810098, *6-7 (S.D. Cal. Oct. 25, 2017) ("Defendants' conduct satisfies the three elements of purposeful direction as described above: Defendants (1) intentionally texted a number with a California area code, (2) by doing so, expected to reach someone in California, and (3) assuming this conduct violated the TCPA, the injury caused by Defendants' conduct occurred in California.").

Freedomsoft's behavior in sending out text broadcasts is not passive. Freedomsoft solicits customers, shows them how to download phone numbers, (including phone numbers of residents of California, such as Plaintiff) craft a message for broadcast and then send them out *en masse*. Defendant's failure to understand what the effects of its own actions were does not mean that its behavior did not cause any effects in California. Further, the nature of Freedomsoft is intended to be a high-volume business, allowing users to send out texts to 100 people in "almost no time." (FAC, ¶¶ 34-37). Placing mass robotext campaigns to purchased lists without regard to the location of the victims is a reckless endeavor into all 50 states.

"The effects test is satisfied by a plaintiff's uncontroverted allegation that a defendant violated the TCPA by [texting] a phone number with a forum state area code." *Moser v. Health Ins. Innovations, Inc.*, Case No. 3:17-CV-1127-WQH-KSC, 2018 U.S. Dist. LEXIS 3237, 2018 WL 325112, *11 (S.D. Cal. Jan. 5, 2018). Courts in this circuit routinely hold that purposeful direction is satisfied by a TCPA violation into the forum state. *See, e.g., Deeba Abedi v. New Age Med. Clinic PA*, Case No. 1:17-CV-1618, 2018 U.S. Dist. LEXIS 105932, 2018 WL 3155618, *8 (E.D. Cal. 2018) ("Because [plaintiff] was living in [California] at the time [plaintiff] received the texts, [defendant] expressly aimed its conduct at California."); *Drew v. Lexington Consumer Advocacy*, Case No. 16-cv-200-LB, 2016 U.S. Dist. LEXIS 188997, 2016 WL 9185292, *3 (N.D. Cal. Aug. 11, 2016) (nonresident defendant

purposefully directed its activities to California by sending six text messages to a California resident); *Heidorn v. BDD Marketing & Mgmt. Co.,* Case No. 13-00229, 2013 U.S. Dist. LEXIS 177166, 2013 WL 6571629, *25 (N.D. Cal. Aug. 19, 2013) (TCPA violation into forum satisfied specific jurisdiction"); *Luna v. Shac, LLC*, Case No. 13-00607, 2014 U.S. Dist. LEXIS 96847, 2014 WL 3421514, at *3 (N.D. Cal. July 14, 2014); *Baker v. Caribbean Cruise Line, Inc.,* Case No. CV 13-8246-PCT-PGR, 2014 U.S. Dist. LEXIS 28960, 2014 WL 880634 (D. Ariz. Mar. 6, 2014); *Ott v. Mortg. Invs. Corp. of Ohio, Inc*., 65 F. Supp. 3d 1046, 1057 (D. Or. 2014); *Rinky Dink Inc. v. Elec. Merchant Sys. Inc*., Case No. C13-1347-JCC, 2014 U.S. Dist. LEXIS 161497, 2014 WL 5880170, *3 (W.D. Wash. Sept. 30, 2014); *Ewing*, 2017 U.S. Dist. LEXIS 177203, 2017 WL 4810098, *7 (otherwise it would be so unjust as to leave Plaintiff with a claim only in the jurisdiction where Defendant resides).

Freedomsoft's citation to *Castillo* does not advance its position, because that case was dismissed for a lack of jurisdiction because there was no connection to California. In contrast, here, the text message was sent to Plaintiff in California. *See Castillo*, 2018 U.S. Dist LEXIS 201721, at *4 (lack of personal jurisdiction where the text message had been received outside the forum state). Freedomsoft's citation to *Naiman* is not helpful, as the case did not address liability of a software platform.

*Figueroa* was a case addressing the software platform's liability, where the court decided not to exercise personal jurisdiction based on texts manually initiated by Plaintiff's friends. But *Figueroa*, besides being from out of circuit, is distinguishable because in this case, Freedomsoft designed, solicited, and encouraged its customers to violate the TCPA. The platform at issue in Figueroa was intended to send one at a time texts to friends, not send broadcast messages *en masse* as Freedomsoft was intended to do.

## ii. The dispute is directly related to Freedomsoft's in-forum actions

Second, the claim must be one which arises out of or relates to the defendant's forum-related activities. *Mavrix Photo Inc. v. Brand Techs. Inc*., 647 F.3d 1218, 1228 (9th Cir. 2011). Here, Freedomsoft's software is the primary cause of the text message into the forum promoting is the exact subject of this dispute. Thus, the dispute arises out of Defendant's activity in the forum state. Indeed, Defendant does not even argue otherwise. If Defendant had not purposefully availed themselves of the privilege of conducting business in California by texting Plaintiff, then Plaintiff would not have any claims against Defendant. *See Long v. Authentic Athletix LLC*, Case No. 16-cv-03129-JSC, 2016 U.S. Dist. LEXIS 142729, 2016 WL 6024591, *16-17 (N.D. Cal. Oct. 14, 2016) ("If Defendants had not done business with Plaintiff and purposefully availed themselves of the forum state, Plaintiff would have no claims against them because he would not have suffered an injury that resulted out of the alleged breach of contract."); *Moser*, 2018 U.S. Dist. LEXIS 3237, 2018 WL 325112, at *11 ("In such a case, the plaintiff's TCPA claim arises out of or relates to the defendant's forum-related activities[.]") (internal citations omitted).

## iii. The exercise of jurisdiction is reasonable

"Once minimum contacts is shown, a rebuttable presumption arises that the exercise of jurisdiction is reasonable." *Sinatra v. National Enquirer, Inc*., 854 F.2d 1191, 1195 (9th Cir. 1988). Defendant bears a "heavy burden" of overcoming this presumption. *Ballard v. Savage*, 65 F.3d 1495, 1500 (9th Cir. 1995). To meet this "heavy burden" defendant must put on a "compelling case" that the presence of some other considerations would render jurisdiction unreasonable. *Bancroft*, 223 F.3d at 1088. To determine reasonableness, the court must consider (1) the extent of the defendant's purposeful interjection into the forum state, (2) the

burden on defendant of defending in the forum state, (3) the extent of the conflict with the sovereignty of defendant's state, (4) the forum state's interest in adjudicating the dispute, (5) the most efficient resolution of the controversy, (6) the importance of the forum to plaintiff's interest in convenient and effective relief, and (7) the existence of an alternative forum. *Id.* Instead of analyzing the reasonableness factors, Freedomsoft merely asserts that exercising jurisdiction would be unreasonable. (Dkt. 38, 14:7-17).

### (1) The first factor favors Plaintiff

Freedomsoft's software downloaded Plaintiff's phone number and the text sent to Plaintiff was activity purposefully directed at California. When purposeful direction is satisfied, then this factor favors exercising jurisdiction. *See CollegeSource, Inc. v. AcademyOne, Inc.*, 653 F3d 1066, 1080 (9th Cir 2011) ("Actions directed at a forum resident expected to cause harm in the forum constitute purposeful injection."). Accordingly, this factor favors Plaintiff. *See Ott.*, 65 F. Supp. 3d at 1058 (actions expected to cause harm to the resident in the forum state were purposeful injection); *Rinky*, 2014 U.S. Dist. LEXIS 161497, 2014 WL 5880170, at *10 (telemarketing known to reach California residents was purposeful injection).

### (2) The second factors Plaintiff

Given the current "advances in transportation and telecommunications and the increasing interstate practice of law, any burden of litigation in a forum other than one's residence is substantially less than in days past." *Collegesource*, 653 F3d at 1080 (internal citations omitted). The burden of Defendant in litigating in California would be no greater than would be the burden on Plaintiff in litigating in Colorado. *See j2Global Communications, Inc., v. Blue Jay, Inc.*, Case No. 08-4254, 2009 U.S. Dist. LEXIS 1616, 2009 WL 29905, *29 (N.D. Cal. Jan. 5, 2009). Such a burden, while potentially inconvenient,

does not rise to the level of depriving Defendant of due process. *See Rinky*, 2014 U.S. Dist. LEXIS 161497, 2014 WL 5880170, at *10.

### (3) The third factor is neutral

The third factor is neutral because there is no conflict of federal law between California and Florida. *See, e.g.*, *j2Global Communications*, 2009 U.S. Dist. LEXIS 1616, 2009 WL 29905, at *29; *Ott.*, 65 F. Supp. 3d at 1058.

### (4) The fourth factor favors Plaintiff

The Ninth Circuit assumes that a forum state "maintains a strong interest in providing an effective means of redress for its residents tortiously injured." *Panavision Int'l, L.P. v. Toeppen*, 141 F.3d 1316, 1323 (9th Cir. 1998) (internal citations omitted). Thus, the fourth factor favors Plaintiff because California has such a strong interest in providing a forum for redress for its residents. *See id*.

### (5) The fifth factor is neutral

This factor focuses on "where the witnesses and evidence are likely to be located." *Caruth v. Int'l Psychoanalytical Ass'n*, 59 F.3d 126, 129 (9th Cir. 1995). However, it "is no longer weighed heavily given the modern advances in communication and transportation." *Panavision In'l*, 141 F.3d at 1323. Plaintiff and his evidence are located in California, so there is no clear preference for Colorado. *See Panavision*, 141 F.3d at 1323-1324 (finding this factor neutral).

### (6) The sixth factor favors Plaintiff

Plaintiff has a significant interest in having this resolved in California, so this factor favors Plaintiff. *See j2Global Communications*, 2009 U.S. Dist. LEXIS 1616, 2009 WL 29905, at *29. If it could not litigate in California, Plaintiff would be forced to incur additional expense of retaining local counsel in Colorado, which would likely make this case

cost prohibitive to Plaintiff. *Rinky*, 2014 U.S. Dist. LEXIS 161497, 2014 WL 5880170, at *10.

### (7) The seventh factor is neutral

The existence of an alternative forum only becomes an issue "when the forum state is shown to be unreasonable." *CollegeSource*, 653 F3d at 1080 (internal quotation marks and citations omitted). Freedomsoft has not established that California is an unreasonable forum. Thus, this factor does not favor either side.

### (8) The balance weighs in favor of exercising jurisdiction

In balancing the factors, courts in the Ninth Circuit "emphasize the heavy burden on both domestic and foreign defendants in proving a *compelling case* of unreasonableness to defeat jurisdiction." *Dole Food Co. v. Watts*, 303 F.3d 1104, 1117 (9th Cir. 2002) (citation omitted, emphasis added). Here, most of the factors are neutral or in Plaintiff's favor. Consequently, Freedomsoft has not carried its "heavy burden" of proving the unreasonableness of the Court's jurisdiction. *See Moser*, 2018 U.S. Dist. LEXIS 3237, 2018 WL 325112, at *11 (court fairly exercised personal jurisdiction over nonresident defendant for its TCPA violation into the forum state).

## VI.    <u>CONCLUSION</u>

For the foregoing reasons, Plaintiff respectfully requests that the Court DENY Freedomsoft's Motion to Dismiss.

Dated: November 8, 2019                     Respectfully submitted,


                                            By:  /s/ Mark L. Javitch           .

                                            Mark L. Javitch (SBN 323729)
                                            480 S. Ellsworth Ave.

San Mateo CA 94401
Tel: 650-781-8000
Fax: 650-648-0705

*Attorney for Plaintiff*
and those similarly situated

## <u>CERTIFICATE OF SERVICE</u>

Filed electronically on this 8th day of November 2019, with the United States District Court for the Northern District of California CM/ECF system.

Notification was therefore automatically sent through the CM/ECF system to:

United States District Court
Northern District of California
And all counsel of record as recorded on the electronic service list.

Kristapor Vartanian
Kabat Chapman & Ozmer LLP
333 S. Grand Ave, Suite 2225
Los Angeles, CA 90071
213-493-3980
Email: kvartanian@kcozlaw.com
ATTORNEY TO BE NOTICED

Ryan David Watstein
Kabat Chapman Ozmer LLP
171 17th Street NW
Suite 1550
Atlanta, GA 30363
404-400-7300
Fax: 404-400-7333
Email: rwatstein@kcozlaw.com

*Counsel for Defendants*

Respectfully submitted,

MARK L. JAVITCH

By: /s/ Mark L. Javitch            .